UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STATES RESOURCES CORP.,

    Plaintiff,
v.                                Case No. 8:13-cv-2015-T-33EAJ

LYNNE GOLDSMITH, ARNOLD
GOLDSMITH, and LJI, INC.,

    Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants Lynne Goldsmith, Arnold Goldsmith, and LJI, Inc.'s Motion to Dismiss (Doc. # 7), filed September 3, 2013. Plaintiff States Resources Corp. filed a Memorandum in Opposition (Doc. # 8) on September 16, 2013. For the reasons that follow, the Court dismisses States Resources's Amended Complaint without prejudice and with leave to amend by December 20, 2013.

**I.  Background**

States Resources Corp. is a corporation organized under the laws of Iowa with its principal place of business in Nebraska. (Id. at ¶ 1). Lynne Goldsmith is a citizen of Florida residing in Pasco County, Florida, and at all times relevant to this action, was the president and sole

shareholder of LJI, Inc. (Id. at ¶ 2). Arnold Goldsmith, Mrs. Goldsmith's husband, is also a citizen of Florida residing in Pasco County, Florida. (Id. at ¶ 3). LJI, Inc. is a dissolved for-profit corporation which was incorporated under the laws of Florida and which had its principal place of business in New Port Richey, Florida. (Id. at ¶ 4).

On August 2, 2004, TEK-VEC, Inc., a now-dissolved Florida corporation of which Mrs. Goldsmith was the vice president, executed and delivered a promissory note in the amount of $242,858.63 ("the Note") to SunTrust Bank. (Id. at ¶ 8). On the same day, LJI, Inc. executed and delivered to SunTrust Bank a mortgage to secure $75,000 of the Note ("the Mortgage"), which mortgaged the real property owned by LJI, Inc. located at 7734 Blackstone Drive, Port Richey, Florida 34668 ("the LJI Property"). (Id. at ¶ 9). The LJI Property was the sole asset of LJI, Inc., which rented it out as its sole business. (Id.). On August 2, 2004, Mrs. Goldsmith also executed and delivered a personal guaranty agreement ("the Guaranty"), which unconditionally guaranteed payment of the Note and all costs arising out of any breach of the Note, to SunTrust Bank. (Id. at ¶ 10).

On May 19, 2005, States Resources was assigned all right, title, and interest in the Note, the Mortgage, and the

Guaranty. (Id. at ¶ 11).  On December 1, 2006, after Mrs. Goldsmith and LJI, Inc. defaulted, States Resources brought suit in the Sixth Judicial Circuit in and for Pasco County, Florida, against LJI, Inc., TEK-VEK, Inc., John Denicola,[1] and Mrs. Goldsmith. (Id. at ¶ 12).  On May 8, 2007, the state court entered a final summary judgment of foreclosure in the amount of $174,221.89 and set a June 13, 2007, sale date for the LJI Property. (Id. at ¶ 13).  Further, that court retained jurisdiction to enter writs of possession and a deficiency judgment. (Id.).

On June 13, 2007, Mr. Goldsmith paid States Resources $60,000 to cancel the foreclosure sale and release the lien on the LJI Property. (Id. at ¶ 14).  States Resources canceled the foreclosure sale, released the lien, and applied a $60,000 credit to the amount owed. (Id.).  On September 20, 2007, the state court entered a final summary judgment in favor of States Resources in the amount of $106,623.75 for the remaining amounts due under the Note and the Guaranty. (Id. at ¶ 16).  On November 5, 2007, the state court awarded

---

[1] Denicola was a party to the state court litigation, but is not a party to the instant action.

attorneys' fees to States Resources in the amount of $5,000, bringing the total amount owed to $111,623.75. (Id. at ¶ 17).

In early 2011, States Resources learned through discovery in aid of execution that Mrs. Goldsmith held stock in LJI, Inc., individually, and that such stock was subject to execution. (Id. at ¶ 18). The stock held value because LJI, Inc. owned and collected rental income from the LJI Property, now free and clear of States Resources's lien. (Id. at ¶ 19). In an effort to collect on its deficiency judgment, States Resources sought possession of Mrs. Goldsmith's stock to assert an interest in the LJI Property and the stream of rental income. (Id. at ¶ 20).

On January 24, 2011, the Pasco County court issued an Amended Writ of Execution and served it on Mrs. Goldsmith. (Id. at ¶ 21). She was also served with a Demand for Levy of Stock requesting that she transfer possession of all shares of LJI, Inc. stock held in her name. (Id. at ¶ 22). Mrs. Goldsmith failed to produce her stock certificates, and as a result, States Resources filed a Motion to Compel Turnover of Stock with the state court on April 7, 2011. (Id. at ¶¶ 23-24). On May 16, 2011, the state court denied the Motion, instructing States Resources's counsel that before it would consider the Motion, States Resources first needed to depose

Mrs. Goldsmith to seek information regarding the location of the LJI, Inc. stock. (Id. at ¶¶ 25-26). On May 17, 2011, the following day, LJI, Inc. through Mrs. Goldsmith, executed a Warranty Deed transferring the LJI Property, LJI, Inc.'s sole asset, to Mr. Goldsmith, a non-judgment debtor. (Id. at ¶ 27).

On June 9, 2011, States Resources deposed Mrs. Goldsmith. (Id. at ¶ 28). During the deposition, Mrs. Goldsmith testified that she was the president of LJI, Inc. but received no salary or compensation and held no interest in the company. (Id. at ¶ 29). She further testified that LJI, Inc.'s purpose was to rent the LJI Property and that the LJI Property was the only property LJI, Inc. rented. (Id. at ¶ 30). She also produced documents confirming that the LJI Property was indeed LJI, Inc.'s sole asset, that LJI, Inc. received monthly rental payments that were deposited into LJI, Inc.'s bank account, and that she owned all of the LJI, Inc. stock, despite her contention that she had no financial interest in LJI, Inc. (Id. at ¶ 31).

On August 2, 2013, States Resources filed the instant Complaint against the Goldsmiths as well as against LJI, Inc. (Doc. # 1). On August 12, 2013, States Resources filed its Amended Complaint against the same Defendants containing the following counts: 18 U.S.C. § 1962(d) RICO civil conspiracy

(Count I) and Florida common law civil conspiracy (Count II). (Doc. # 5).[2]

At this juncture, Defendants seek an Order dismissing this action due to the presence of parallel state court proceedings pursuant to the Colorado River abstention doctrine. Defendants also contend that both counts of the Amended Complaint are subject to dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P.

## II.  Colorado River Abstention Doctrine

Defendants request that the Court dismiss this action under the Colorado River abstention doctrine. (Doc. # 7 at 5). In Colorado River Water Conservation District v. United States, 424 U.S. 800, 818-20 (1976), the Supreme Court held that a federal court could abstain from a case if "(1) a parallel lawsuit was proceeding in state court, and (2) judicial-administration reasons so demanded abstention." Jackson-Platts v. General Elec. Capital Corp., 727 F.3d 1127, 1140 (11th Cir. 2013). "Only the clearest of justifications," however, will merit such abstention. Colorado River, 424 U.S. at 819.  Federal courts have a "virtually unflagging

---

[2] States Resources filed the Amended Complaint in response to this Court's August 6, 2013, Order directing States Resources to clarify its jurisdictional allegations. (Doc. # 4).

obligation . . . to exercise the jurisdiction given them." Id. at 818. "A policy permitting federal courts to yield jurisdiction to state courts cavalierly would betray this obligation." Ambrosia Coal & Constr. Co. v. Pages Morales, 368 F.3d 1320, 1328 (11th Cir. 2004).

Abstention, then, "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Colorado River, 424 U.S. at 813 (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959)). Colorado River abstention is rarer still, "permissible in fewer circumstances than are the other abstention doctrines." Ambrosia Coal, 368 F.3d at 1331. Thus, "dismissal of an action in deference to parallel state proceedings is an extraordinary step that should not be undertaken absent a danger of a serious waste of judicial resources." Noonan S., Inc. v. County of Volusia, 841 F.2d 380, 383 (11th Cir. 1988).

"As a threshold matter, a federal court may abstain under the Colorado River doctrine only if there is a parallel state action, which is one involving substantially the same parties and substantially the same issues." Jackson-Platts, 727 F.3d at 1140 (quoting Ambrosia Coal, 368 F.3d at 1330) (internal

quotations omitted).  The parties dispute whether the Pasco County litigation meets this threshold.

Defendants argue that the cases are parallel, as both address "the nature of the underlying transfer of the real property." (Doc. # 7 at 7).  States Resources, on the other hand, contends that the "Pasco County Litigation is a wholly independent and different cause of action than the case at issue," involving different legal issues, claims, remedies, and parties.  (Doc. # 8 at 6-7).  The Pasco County case, it argues, involved claims for breach of contract and mortgage foreclosure against Mrs. Goldsmith, LJI, Inc., TEK-VEK, Inc., and Denicola. (Id. at 6).  The instant federal case, meanwhile, raises civil conspiracy and RICO claims, includes Mr. Goldsmith as a party, does not involve TEK-VEK, Inc. or Denicola, and seeks damages separate and apart from the loan documents upon which the state court claims are based.

The Court agrees with States Resources the Pasco County case and present case are not "parallel" cases warranting application of the Colorado River abstention doctrine.  The instant action involves different parties and different claims from those involved in the state proceeding.  However, even if the Court were to find that the state case and the

present case are parallel proceedings, abstaining under Colorado River would, nevertheless, be improper.

Federal courts consider six factors in determining whether Colorado River abstention is appropriate when faced with a parallel state court proceeding:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

TranSouth Fin. Corp. v. Bell, 149 F.3d 1292, 1294-95 (11th Cir. 1998). The balancing of these factors is "heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983). "Thus, the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." Woodford v. Cmty. Action Agency of Greene County, Inc., 239 F.3d 517, 522 (2d Cir. 2001). No single factor determines whether the Court will abstain or accept jurisdiction. Am. Bankers Ins. Co. of Fla. v. First State Ins. Co., 891 F.2d 882, 884-85 (11th Cir. 1990).

The first Colorado River factor considers whether one court assumed jurisdiction over property before the other court. This factor only applies where there is a proceeding in rem. Jackson-Platts, 727 F.3d at 1141. "Put differently, where there is no real property at issue, this factor does not favor abstention." Id. (internal quotations omitted). There is no real property at issue in this case — States Resources petitions this Court only "for damages, plus reasonable attorneys' fees and costs, and such other relief as the Court deems proper." (Doc. # 5 at 9). As such, this factor does not favor abstention.

The second factor "concerns the inconvenience of the federal forum and focuses primarily on the physical proximity of the federal forum to the evidence and witnesses." Jackson-Platts, 727 F.3d at 1141. Here, neither party disputes the convenience of the federal forum and both affirm that this factor weighs against abstention. (Doc. ## 7 at 6; 8 at 6).

Under the third factor, the Court considers which forum acquired jurisdiction first. What matters is not so much "which complaint was filed first, but rather . . . how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 21. Defendants contend that the state court asserted jurisdiction over the case in November of 2006,

nearly seven years before States Resources filed the instant action in this Court. (Doc. # 7 at 6). Defendants argue that States Resources, "having read the writing on the wall," now "seeks another forum in which to reclaim the Real Property which they previously released in exchange for $60,000 from Mr. Goldsmith." (Id. at 7). States Resources concedes that the state court asserted jurisdiction years before federal court, but counters that the instant action involves different claims, different parties, and different remedies. (Id. at 7, 8).

Nothing presented to this Court suggests that the state court has addressed the allegedly wrongful transfer of the LJI Property or the resulting conspiracy claims that States Resources raises here. Although the state court action was filed years prior to this action, it does not appear that the state case has made more progress as to the present issues, and the Court accordingly finds that this factor does not "weigh[] heavily in favor of dismissal," as Defendants suggest. (Doc. # 7 at 6).

The fourth factor evaluates the potential for piecemeal litigation and does not favor abstention unless accepting jurisdiction "will likely lead to piecemeal litigation that is abnormally excessive or deleterious." Ambrosia Coal, 368

F.3d at 1333. The Court is not persuaded that accepting jurisdiction will likely lead to abnormally excessive or deleterious piecemeal litigation, and the fourth factor thus weighs against abstention.

The fifth factor concerns whether federal law or state law provides the rule of decision. Defendants argue that both Count II and the basis of Count I are "clearly [matters] of Florida law." (Doc. # 7 at 8). The mere presence of state law issues, however, will weigh in favor of dismissal only in rare circumstances. Am. Banks Ins. Co. of Fla. v. First State Ins. Co., 891 F.2d 882, 886 (11th Cir. 1990). This factor only favors abstention where "the applicable state law is particularly complex or best left for state courts to resolve." Jackson-Platts, 727 F.3d at 1143. Nothing suggests that Florida civil conspiracy "is the kind of complex law that raises thorny and difficult state law questions"; Id., federal courts in fact regularly consider such claims. See, e.g., Astro Tel, Inc. v. Verizon Fla. LLC, No. 8:11-cv-2224-T-33TBM, 2013 WL 5781658 (M.D. Fla. Oct. 25, 2013). This factor thus does not weigh in favor of abstention.

Under the sixth and final factor, the Court considers whether the state court can adequately protect the rights of the parties. Defendants argue that this factor weighs in

-12-

favor of abstention because the state proceedings have been ongoing since 2006. "Clearly," they contend, "the interests of the plaintiff have been adequately protected in the forum that the plaintiff initially chose." (Doc. # 7 at 8). Defendants do not argue, however, that the federal forum is inadequate to protect the rights of the parties. "The fact that both forums are adequate to protect the parties' rights merely renders this factor neutral." Noonan S., 841 F.2d at 383; accord Ambrosia Coal, 368 F.3d at 1334 ("This factor will only weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights.") Thus, the final factor does not weigh in favor of abstention.

As none of the Colorado River factors weigh in favor of abstention and in light of the Court's robust and unflagging duty to exercise its jurisdiction, the Court denies Defendants' request for dismissal pursuant to the Colorado River abstention doctrine. The Court will now evaluate States Resources's claims under the calculus of Rule 12(b)(6), Fed. R. Civ. P.

### III. Rule 12(b)(6) Analysis

In reviewing a motion to dismiss for failure to state a claim, a trial court accepts as true all factual allegations in the complaint and construes the facts in the light most

favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In Bell Atlantic Corp. v. Twombly, the Supreme Court articulated the standard by which claims should be evaluated on a motion to dismiss:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. 544, 555 (2007) (internal citations omitted).

In accordance with Twombly, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### A. Count I - RICO Conspiracy

States Resources alleges that on May 17, 2011, the Goldsmiths and LJI, Inc. "agreed to wrongfully transfer the LJI Property to Arnold [Goldsmith] in order to hinder States Resources's judgment collection efforts." (Doc. # 5 at ¶ 33). As a result, States Resources claims that the LJI Property "has been wrongfully sheltered from execution, and therefore . . . [States Resources] has suffered damage." (Id. at ¶ 39). States Resources argues that these alleged facts demonstrate the existence of a RICO conspiracy between Lynne Goldsmith, Arnold Goldsmith, and LJI, Inc. in violation of 18 U.S.C. § 1962(d). (Id. at ¶ 32-39). The Goldsmiths and LJI, Inc. move to dismiss this count pursuant to Rule 12(b)(6), Fed. R. Civ. P., arguing that States Resources fails to state a cause of action. (Doc. # 7 at 8-9).

Under section 1962(d) of the RICO statute, it is illegal to conspire to violate one of RICO's substantive provisions. 18 U.S.C. § 1962(d). "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1293 (11th Cir. 2010) (quoting Republic of Panama v.

-15-

BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 950 (11th Cir. 1997)). A plaintiff need not demonstrate direct evidence of a RICO agreement; a conspiracy "may be inferred from the conduct of the participants." Id. at 1293 (quoting Republic of Panama, 119 F.3d at 950).

Agreement to an overall objective of the conspiracy can be proven by circumstantial evidence showing "that 'each defendant must necessarily have known that the others were also conspiring to participate in the same enterprise *through a pattern of racketeering activity*.'" United States v. Shenberg, 89 F.3d 1461, 1471 (11th Cir. 1996)(emphasis added). "Racketeering activity" is defined under 18 U.S.C. § 1961(1) in the form of numerous predicate acts. States Resources offers no argument that the alleged acts evince knowledge on the part of the Goldsmiths or LJI, Inc. that others conspired to commit specific RICO predicates, nor does it argue that those acts themselves constitute such predicates. Having failed to allege racketeering activity or the contemplation of racketeering activity, either by showing an agreement to an overall objective or an agreement to commit two predicate acts, States Resources fails to establish a viable RICO conspiracy claim. As such, the Court grants the Motion to Dismiss as to Count I.

**B.     Count II – Civil Conspiracy**

"The elements of a civil conspiracy are: (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy." Kurnow v. Abbott, 114 So. 3d 1099, 1102 n.4 (Fla. 1st DCA 2013) (emphasis omitted).

States Resources alleges that the Goldsmiths and LJI, Inc. "transferred the Property in an attempt to shield the LJI Property, Mrs. Goldsmith's LJI stock, and Mrs. Goldsmith's ownership interest in LJI from execution by States Resources." (Doc. # 5 at ¶ 47). As a result, States Resources claims it suffered damage. (Id. at ¶ 50). According to States Resources, these actions demonstrate the existence of a civil conspiracy under Florida law. (Id. at ¶¶ 40-50). The Goldsmiths and LJI, Inc. move to dismiss this count, arguing that States Resources has failed to state a claim upon which relief can be granted. (Doc. # 7 at 9-10).

Although States Resources alleges that two or more parties "conspired" to commit an action and that it suffered damage as a result, it fails to allege that the action — the transfer of the LJI Property to Mr. Goldsmith — was unlawful

or was effected by unlawful means. Having failed to plead an essential element of the civil conspiracy claim, States Resources has not demonstrated that it is entitled to relief. As such, the Court grants to Motion to Dismiss as to Count II.

The Amended Complaint is dismissed without prejudice. States Resources is granted leave to file a Second Amended Complaint to cure the deficiencies noted herein, if it so chooses, by December 20, 2013.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants' Motion to Dismiss (Doc. # 7) is **GRANTED.** States Resources's Amended Complaint (Doc. # 5) is dismissed without prejudice for the reasons articulated above.

(2) States Resources may file a Second Amended Complaint on or before December 20, 2013, if it so chooses.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 5th day of December, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: All Counsel of Record